UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARVIN HARRIS, JR.,

    Petitioner,

v.                                    Case Nos.:  2:23-cv-582-SPC-NPM
                                                                 2:20-cr-134-SPC-NPM

UNITED STATES,

    Respondent.
_____/

## **OPINION AND ORDER**

Before the Court is Petitioner Marvin Harris Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 1), along with the Government's opposition (Doc. 5; Doc. 6).[1] The Motion is denied for the below reasons.

### BACKGROUND

Three years ago, a federal grand jury charged Harris with conspiring to distribute and intending to distribute fentanyl, crack cocaine, and cocaine. (Cr-Doc. 1). It also charged him with substantive counts related to fentanyl. (Cr-Doc. 1). Attorney Joseph G. Viacava represented Harris. (Cr-Doc. 119).

---

[1] The Court cites to documents from Case No. 2:23-cv-469-SPC-NPM as Doc. _ and documents from 2:20-cr-111-SPC-NPM as Cr-Doc. _.

Harris eventually pleaded guilty to the conspiracy charge per a signed Plea Agreement. (Cr-Doc. 265; Cr-Doc. 302 at 6-7, 24). The Court accepted his plea and adjudicated him guilty. (Cr-Doc. 275). It later sentenced him to 293 months' imprisonment, a high-end guidelines range sentence. (Cr-Doc. 311). Harris appealed but lost. (Cr-Doc. 348).[2] He now timely moves for § 2255 relief, asserting that Viacava provided ineffective assistance of counsel.

## LEGAL STANDARDS

**A. 28 U.S.C. § 2255**

A prisoner in federal custody may move for his sentence to be vacated, set aside, or corrected on four possible grounds: (1) the imposed sentence violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was over the maximum allowed by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion "may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). The petitioner bears the burden of proof. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation omitted).

---

[2] A different lawyer represented Harris on appeal and filed an *Anders* brief. The Eleventh Circuit then found "no arguable issues of merit" and affirmed Harris' conviction and sentence. (Doc. 348).

## B. Procedural Default

Generally, a § 2255 petitioner may not raise a ground he did not argue on direct appeal. *Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013). This procedural default rule "is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). There are two exceptions to the procedural default rule: cause and actual prejudice, and actual innocence. Neither apply here.

## C. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to reasonably effective assistance of counsel. In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief under the Sixth Amendment. 466 U.S. 668, 687-88 (1984). A petitioner must show that (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id*. Failure to show either *Strickland* prong is fatal. *See Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) ("[A] court need not address both *Strickland* prongs if the petitioner fails to establish either of them").

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 1355 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is a lesser showing than a preponderance of the evidence." *Id.* (cleaned up). "At the same time, 'it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding' because 'virtually every act or omission of counsel would meet that test.'" *Id.* (quoting *Strickland*, 466 U.S. at 693).

**D. Effect of a Guilty Plea**

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Thus, when a § 2255 motion collaterally challenges a conviction obtained through a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). Alternatively, "[a] guilty plea is open to attack on the ground that counsel did not provide the

defendant with reasonably competent advice." *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (cleaned up).

## DISCUSSION

Harris' arguments on why Viacava provided ineffective assistance fall into two categories. The first is Viacava did not object to certain sentencing enhancements. The second is Viacava promised him a sentence at the bottom of the guideline range. Neither argument wins under *Strickland*.

**A. Sentencing Enhancements (Grounds 1-3)**

According to Harris, Viacava did not argue against three sentencing enhancements for (1) having a firearm, (2) organizing/leading the conspiracy, and (3) maintaining a premise to manufacture or distribute drugs. The record tells a different story.

Before the sentencing hearing, Viacava objected to the firearm and role-in-conspiracy enhancements in the Presentence Investigation Report ("PSR"). (Doc. 304 at 32-34). But Viacava—after consulting Harris—waived the objections at the hearing. (Doc. 341 at 3-4). The Court confirmed with Harris he discussed potential objections to the PSR's facts with Viacava and still had no objections—Harris answered affirmatively. (Doc. 341 at 4). The Court also confirmed that Viacava had no objections to the application of the guidelines. (Doc. 341 at 4).

5

Before the Court pronounced the sentence, however, it offered Viacava a chance for argument. Viacava capitalized. He said the enhancements did not apply under the facts, but it was "right on the line." (Doc. 341 at 16). According to Viacava, he withdrew the objections mostly because the Government told Harris they were frivolous, and it would argue against any acceptance-of-responsibility reduction if he maintained them:

> And, with the objections, we agreed to those because the government basically said they were going to take away his three levels of acceptance of responsibility, and **my client was terrified of losing that**. I'm not going back on those objections. We agree that they are there. I'm just trying to point out to the Court that they are there.

(Doc. 341 at 19-20; *see also* Doc. 5 at 15, n. 3 (emphasis added)).[3] Viacava also gave examples on why he believed the enhancements didn't apply in hopes of the Court varying downward.

So Harris is wrong that Viacava neglected to argue against enhancements. And he makes no argument that withdrawing the objections to save the three levels of acceptance-of-responsibility reduction was deficient performance. Nor does he argue his sentence would have been different but for Viacava's alleged errors.

---

[3] Viacava gave another reason for withdrawing the objections: "I'm just trying to let the Court know that he's trying to cooperate the best he can. He didn't want to put the government through their paces or put the family through having to testify, and that's why we waived all those objections." (Doc. 341 at 20).

What's more, Harris' arguments on the enhancements are frivolous, especially considering his sworn statements in the Plea Agreement and admission to the PSR's factual accuracy. Viacava thus was not deficient for failing to raise meritless arguments. *See Frederick v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). Here's why.

The first enhancement was for Harris possessing firearms in his home and trap houses. (Doc. 304 at 14). Under U.S.S.G. § 2D1.1(b)(1), two levels are added if the defendant possessed a firearm. Harris maintains he did not own or have any firearms and stresses certain references to him owning a firearm was struck from the Plea Agreement. (Cr-Doc. 265 at 9, 18; Cr-Doc. 267). But the argument misses the mark. The firearms were undisputedly found near narcotics and drug paraphernalia, which is enough for the enhancement. *See United States v. Carillo-Ayala*, 713 F.3d 82, 91 (11th Cir. 2013) ("Cases decided under § 2D1.1 recognize that proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)."); *see also United States v. Montenegro*, 1 F.4th 940, 946 (11th Cir. 2021).

Plus, the enhancement may apply if a co-conspirator possessed a firearm the defendant was unaware of, provided it was "reasonably foreseeable" the co-conspirator would possess one while "trafficking in lucrative and illegal drugs." *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) (citation omitted). So even if Harris did not know about guns at the trap houses (which is

7

unlikely), his conspiracy was so vast with lots of drugs and money being exchanged, that it was reasonably foreseeable that a co-conspirator would have a firearm as a tool of the trade. So Harris has satisfied neither *Strickland* prong.

The second enhancement was for Harris' leadership role in the conspiracy. (Cr-Doc. 304 at 14). Under U.S.S.G. § 3B1.1(a), four levels are added if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. The Court applied the enhancement because the conspiracy spanned months during which Harris directed others, received a large share of the profits, maintained a trap house, and possessed firearms. (*Id.*). Harris also admitted key facts in the Plea Agreement that locked in this enhancement. (Cr-Doc. 265; Cr-Doc. 302 at 36-37). For example, Harris conceded that he "was the leader of and supplier of a drug trafficking organization operation in Lee County, Florida." (Cr-Doc. 265 at 16). He also certified that he "and others within the organization distributed controlled substances, including fentanyl and cocaine base, to customers from a house . . . controlled by Harris, Jr." (*Id.* at 17). Harris also admitted that he required dealers to rotate selling drugs and profited from that structure. (*Id.*). Plus being arrested didn't slow Harris down. He continued to run the conspiracy from jail, providing instructions and supplying his dealers. (*Id.*). Given these admissions, the Court is hard-pressed

to find Harris has satisfied either *Strickland* prong with the role-in-offense enhancement.

The third enhancement was for maintaining a premise to manufacture or distribute a controlled substance. (Cr-Doc. 304 at 14). Under § 2D1.1(b)(12), two levels are added if "the defendant maintained a premises for the purposes of manufacturing or distributing a controlled substance." The commentary says, "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant-controlled access to, or activities at, the premises."

The Court need look only to the Plea Agreement to know the enhancement was properly applied. In the Plea Agreement, Harris admitted these facts:

- he led and supplied drugs to customers from a trap house he controlled
- he ran daily operations at the trap house
- Co-defendant Destiny Molina (his former girlfriend) opened an electric account for a trap house, but the utility account was registered to Harris
- he let co-conspirators control access to and activities at the trap house to distribute drugs
    - law enforcement seized drugs at his home

9

(Cr-Doc. 304 at 14, 17, 19, and 29). Because of these admissions, Viacava did not provide Harris ineffective assistance of counsel.

At bottom, Harris has not shown that Viacava's failure to object to certain sentencing enhancements was deficient performance or prejudiced him. *Cf. Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (counsel's performance is an objective inquiry and presumed reasonable). The Court thus denies Grounds 1 through 3.

**B. Length of Sentence**

Harris next argues that Viacava "frequently and confidently" assured him of a low-end guidelines sentence because of his lack of criminal history and age, and because Viacava's wife worked at the U.S. Attorney's Office. (Doc. 1 at 6).

The Plea Agreement set the mandatory minimum term of imprisonment of five years to up to forty. (Cr-Doc. 265 at 1). At the change of plea hearing, Harris stated that he understood the penalties associated with the conspiracy charge, and that he discussed the sentencing guidelines with Viacava. (Cr-Doc. 302 at 21). The Magistrate Judge warned Harris that the district judge could impose any sentence up to the maximum allowed by law and that the sentence could be more severe than recommended to her. The Magistrate Judge asked Harris if Viacava explained the factors the district judge could

consider in fashioning his sentence, including his criminal history and his role in the offense, and his acceptance of responsibility:

> THE DEFENDANT: Yes, sir.
>
> THE COURT: Just so we're clear, Mr. Harris, has your attorney explained those things to you?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 22).  The Magistrate Judge warned Harris about any estimated sentence that is attorney may predict:

> THE COURT: Mr. Harris, the sentence that the District Judge imposes in your case may be different than any estimated sentence that your attorney or anyone else has given you. In fact, it might be higher than you expect. If that happens, you'll still be bound by your guilty plea, and you will not have a right to withdraw.
>
> Mr. Harris, do you understand all these things that I just explained to you about the sentencing process?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any questions about anything I've explained so far?
>
> THE DEFENDANT: No, sir.

(*Id.* at 23).

Harris also stated that he understood the Plea Agreement and that he would be bound by it.  He stated that he had no objection to the factual basis as read by the United States, and as stated in the modified Plea Agreement, and he admitted to the facts as true.  (*Id.* at 36-39).

11

Pertinent here, Harris denied that any promises or assurances had been made to him. (*Id.* at 34). Indeed, he responded 'no' when asked if he was threatened, forced, coerced, or intimidated to plead guilty, and he again said 'no' when asked if he was made any promises or assurances. Harris also denied relying on any agreement, discussion, promise, or understanding with anyone about the sentence that would be imposed if he pleaded guilty:

> THE COURT: At this time, sir, do you believe you know what sentence you will receive?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Other than what's in your plea agreement, has anyone promised you that you will receive a light sentence or otherwise be rewarded for pleading guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Counsel, do you each assure the Court that, as far as you know, no assurances, promises, or understandings have been given to Mr. Harris as to disposition of his case that are different from or contrary to what's in his plea agreement?
>
> Mr. Leeman?
>
> MR. LEEMAN: Yes, Your Honor.
>
> THE COURT: Mr. Viacava?
>
> MR. VIACAVA: Yes, Your Honor.

(*Id.* at 42). Harris also assured the Magistrate Judge that Viacava did everything he asked him to do before entering a guilty plea, and that he had no complaints about his representation. (*Id.* at 43-44).

And Viacava continue to advocate for Harris at sentencing. He argued for a sentence of 15 or less years because of Harris' young age and lack of criminal history. (Cr-Doc. 341 at 19). But the Court was not persuaded. Yet it was not the quality of Viacava's respresentation that led the Court to believe a higher sentenced to be more appropriate—it was Harris' conduct in the offense. For example, the Court stated, "Harris preyed on individuals who were drug addicts themselves who needed their next fix. And they could only do that by selling drugs out of that trap house, taking some of the proceeds that they received, and cutting off the top of the drugs that were sold there." (*Id.* at 23). As the conspiracy's leader, the Court concluded a sentence of 293 months' was necessary given the seriousness of the conspiracy, need to promote respect for the laws, and provide just punishment. (*Id.* at 25).

At bottom, Harris shows no reasonable probability that, but for Viacava's errors, he would not have pleaded guilty and insisted on a trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The plea colloquy shows he was satisfied with Viacava, and pleaded guilty voluntarily and knowing his sentence could not be predicted—even by his attorney. The Court thus denies Ground 4.

## C. Evidentiary Hearing

The Court concludes with no need for an evidentiary hearing because the "motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b). The Court understands that

generally "[i]f the petitioner alleges facts, that if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017). Although a petitioner need only allege, not prove, facts that would entitle him to relief, the alleged facts must be reasonably specific and non-conclusory. *Allen v. Sec'y, Fla. Dep't or Corr.*, 611 F.3d 740, 745 (11th Cir. 2010). And if the petitioner's allegations are "affirmatively contradicted by the record" and "patently frivolous," the court need not hold an evidentiary hearing—which is the situation here. The Court thus need not hold an evidentiary hearing to decide Harris' § 2255 motion.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking relief under § 2255 has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must show "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003)

(citations omitted). Harris has not made the requisite showing and may not have a certificate of appealability on any ground of his Motion.

Accordingly, it is

**ORDERED:**

1. Petitioner Marvin Harris Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1; Cr-Docs. 350, 352) is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment against Harris and for the United States.

3. The Clerk is further **DIRECTED** to terminate any deadlines, close this case, and cross-file this Opinion and Order in the companion criminal case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 15, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record